UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br><br>THE WASHINGTON-MCLAUGHLIN CHRISTIAN SCHOOL, INC.<br><br>Debtor | Case No. 26-11355-MCR<br><br>Chapter 11 |

**MOTION TO COMPROMISE CONTROVERSY WITH THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

The Washington-McLaughlin Christian School, Inc. (the "Debtor"), by and through its undersigned counsel, pursuant to Fed. R. Bankr. P. 9019, files this Motion for Approval of Compromise of Controversy with the United States Department of Housing and Urban Development (the "Motion") and, in support thereof, states as follows:

**Background**

1. On July 29, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues in possession of its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor owns the real property and improvements located at 6501 Poplar Avenue, Takoma Park, Maryland 20912 (the "Property").

3. The Property was previously used to operate a private religious school in the Washington metropolitan area before ceasing operations in approximately 2012. Currently, part of the Property is leased to an adult day-care facility affiliated with the Debtor.

4. The Debtor is pursuing a sale of the Property which is anticipated to pay all Allowed claims in full.

**The Claim of the U.S. Department of Housing and Urban Development**

5. In approximately 1998, the Debtor leased part of the Property to The Washington-Laughlin Apartments for Senior Citizens, Inc. ("WMASC"), which was formed by the Debtor's principal for the purpose of providing housing to low-income elderly persons or persons with disabilities.

6. In connection with the development of the housing program, WMASC sought and obtained a capital advance from the U.S. Department of Housing and Urban Development ("HUD"), funded under Section 202 of the Housing Act of 1959. The capital advance was in the original amount of $624,800.00, and was potentially forgivable (*i.e.,* would not have to be repaid) if the borrower strictly adhered to all federal statutory, regulatory and contractual requirements for a mandatory 40-year affordability period associated with the capital advance (the "Capital Advance").

7. HUD intended the Capital Advance to be secured by WMASC's rights in and to, among other things, a leasehold interest through its lease from the Debtor, and for WMASC to be bound by a Use Agreement that included a restrictive covenant that runs with the leasehold estate for the 40-year affordability period.

8. In connection with the Capital Advance, WMASC executed a Mortgage, Deed of Trust or Security Deed and a HUD Use Agreement (collectively, the "HUD Security Documents"), purporting to pledge its fee simple interest in the Property. However, since WMASC was never on title to the Property, the Debtor asserts that it was unable to pledge any fee simple interest in the Property to HUD.

9. HUD ultimately determined WMASC ineligible to continue its participation in the housing program, and sought repayment of the Capital Advance indebtedness.

10. A dispute exists as to the validity of HUD's asserted lien against the Property and the validity of HUD's claim against the Debtor. Among other things, as stated, at the time WMASC executed one or more of the HUD Security Documents, WMASC was not the owner of the Property, and could not have pledged a lien interest to HUD in or against the Property.

11. HUD disputes the Debtor's contentions and asserts a secured claim against the Property in the amount of $1,757,067.31.

12. Following discussions, the Debtor and HUD, subject to Bankruptcy Court approval, reached an agreement to resolve their disputes, set forth more fully in the Settlement Agreement attached hereto as Exhibit A.

13. The material terms of the Settlement are summarized below:[1]

a. In connection with any sale of the Property during the Bankruptcy Case in which the gross purchase price is equal to or greater than $1.5 million, HUD shall release any putative lien against the Property under the HUD Security Documents and any obligations arising out of the Use Agreement and/or Regulatory Agreement, and HUD hereby consents to such sale free and clear of any purported lien of HUD pursuant to Section 363(f) of the Bankruptcy Code, with no lien attaching to the proceeds of such sale. The Debtor may include such releases in its proposed sale order, and then record a copy of the Court's sale order to effectuate the releases. All proceeds of such sale shall be held in the Debtor's attorney's trust account;

b. In the event the Debtor fails to sell the Property for a gross price equal to or greater than $1.5 million within 1 year of the Effective Date, this Settlement Agreement shall be null and void and of no force and effect, and the Parties shall be returned to the same positions they were in prior to execution of this Settlement Agreement, as if this Settlement Agreement had never been executed. HUD may agree to extend this deadline;

c. HUD shall hold an allowed general unsecured claim (the "HUD Unsecured Claim") in the Bankruptcy Case in the amount of $624,800, the original principal amount of the WMASC Capital Advance. HUD shall not be required to file a proof of claim evidencing such claim, which shall be allowed pursuant to the terms of this Agreement and any Bankruptcy Court order approving this Agreement;

[1] To the extent there is any inconsistency between the terms set forth in this Motion and those contained in the Settlement Agreement, the Settlement Agreement shall control.

d. The Debtor shall file a modified or amended chapter 11 plan in the Bankruptcy Case providing for payment of all general unsecured claims in full, without interest, including HUD's unsecured claim set forth in this Settlement Agreement. The plan shall provide that, on the later of the Plan's Effective Date or ten (10) days after the closing of any sale of the Property, the net proceeds from such sale, after payment of the ordinary and necessary costs of sale and valid, outstanding liens against the Property, the remaining proceeds of such sale shall be used to pay allowed claims under the Plan, including administrative creditors, any priority claims under the Bankruptcy Code, and claims of unsecured creditors, and shall indicate that any remaining balance on such claims shall be paid in full over a term of not more than five years; and

e. Subject to fulfillment of the Settlement Agreement, The Debtor, WMASC and HUD shall mutually release obligations arising under or in connection with the Capital Advance, the HUD Security Documents or HUD's Unsecured Claim, and, upon completion of payment of the claim, HUD shall in addition release the Debtor's principal, Pauline. P. Washington from such liabilities.

14. By agreement of the parties, to the extent the Debtor's amended or modified plan treats HUD as set forth in the Settlement Agreement, HUD shall be deemed to approve or accept the Debtor's amended or modified plan without the need to cast a ballot.

15. For the reasons set forth herein, the Debtor believes the Settlement is fair and reasonable and in the best interests of the Bankruptcy Estate and its creditors.

**<u>Legal Analysis</u>**

16. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order ... necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." In turn, Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

17. As a matter of policy, Bankruptcy Rule 9019(a) grants courts broad authority to consider and approve compromises and settlements involving the debtor and the bankruptcy estate. *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424 (1968) ("[I]n administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims to which are substantial and reasonable doubts"); *United States ex rel. Rahman v. Oncology Assoc., P.C., et al.,* 269 B.R. 139, 149 (D. Md. 2001) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements."). Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

18. In approving a settlement, the Court must determine whether such settlement is in the best interests of the estate, which requires an examination of the litigation's probable costs and benefits. While it is the obligation of a bankruptcy court to review independently a proposed compromise to determine whether it is fair and equitable and in the best interests of the bankruptcy estate, settlements are to be encouraged. *See Nussbaum v. United States (In re Smith),* 210 B.R. 689, 692 (Bankr. D. Md. 1997) (Derby, J.).

19. When recovering assets that may involve "protracted investigation or potentially costly litigation, with no guarantees as to the outcome, the trustee must tread cautiously and an inquiring court must accord her wide latitude should she conclude that the game is not worth the candle." *In re Mailman Steam Carpet Cleaning Corp.,* 212 F.3d 632, 635 (1st Cir. 2000), *cert denied,* 120 S. Ct. 2661 (2000). When a settlement agreement provides tangible benefits to the estate in return for a sacrifice of uncertain claims against a creditor, a bankruptcy court does not err in approving the settlement. *In re Bond,* No. 93 1410, 1994 WL 20107 * 4 (4th Cir. 1994).

20. A court must examine whether the debtor's or trustee's actions in settling fall within the universe of reasonable action, not whether pressing onward might produce more funds for the estate. *See In re Ashford Hotels, Ltd.,* 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) (viewing

settlement within the "lowest point in the range of reasonableness"). A court may approve a settlement over objections unless the proposed settlement falls below the "lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608, 613 (2d Cir. 1983).

21. In determining the reasonableness of the proposed settlement, a court should take into account at least the following factors: (a) the probability of ultimate success should the issue be litigated; (b) the complexity, expense, and likely duration of such litigation; (c) the possible difficulty of collection on any judgment ultimately upheld; and (d) all other factors relevant to a full and fair assessment of the proposed compromise. *In re Bowman,* 181 B.R. 836, 843 (Bankr. D. Md. 1995).

22. In the instant case, HUD maintains that it has a perfected first priority lien on and against the Debtor's Property and its assets. Though the Debtor believes it would prevail in claiming that HUD's purported lien is fatally defective, HUD is equally confident that its lien is valid and properly perfected against the Property. Litigation to determine the extent and validity of HUD's purported lien would be costly, disruptive and time consuming. Though the third factor – difficultly of collection on any judgment – is not a relevant factor, the terms of the Settlement, on a whole, are fair and reasonable and fall well above the "lowest point in the range of reasonableness," and is therefore in the best interest the Debtor and its creditors.

23. Accordingly, the Debtor, in the exercise of its business judgment, believes that the compromise with HUD is fair and reasonable and is in the best interest of creditors and the Bankruptcy Estate, and respectfully requests that the Court approve the Settlement.

**CONCLUSION**

WHEREFORE, The Washington-McLaughlin Christian School, Inc., respectfully requests that the Court enter an Order granting this Motion on the terms set forth in the Settlement Agreement attached hereto and grant such other and further relief as is just and appropriate.

Date: August 27, 2026

Respectfully submitted:

/s/ Augustus T. Curtis
Augustus T. Curtis (Bar No. 26653)
Offit Kurman, P.A.
The Patrick Center 30 West
Patrick Street
Frederick, Maryland 21701
(240) 772-5200
Augustus.curtis@offitkurman.com
*Attorneys to the Debtor*

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing Motion, Notice of Motion, Proposed Order and Exhibit will be served electronically by the Court's CM/ECF system on the following:

Monique D. Almy: malmy@crowell.com

U. S. Trustee for Region Four
USTPRegion04.DC.ECF@USDOJ.GOV

L. Jeanette Rice Jeanette.Rice@usdoj.gov

Richard Costella rcostella@tydings.com

Courtney Morgan Courtney.l.morgan@usdoj.gov

I hereby further certify that on the 27th day of August, 2026, I sent a copy of the foregoing Motion, Notice of Motion, Proposed Order and Exhibit by first class mail, postage prepaid, to the following:

Office of the United States Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

Jessica Dillon, Esquire
Trial Attorney
Office of the United States Attorney
36 S. Charles Street, 4th Floor
Baltimore, MD 21201

And to the parties on the attached mailing matrix

*/s/ Augustus T. Curtis*
Augustus T. Curtis

4933-3653-2939, v. 1

Label Matrix for local noticing
0416-0
Case 26-11355
District of Maryland
Greenbelt
Thu Mar 19 00:24:10 EDT 2026

Tax Auction of East Coast, LLC
c/o Richard L. Costella
Tydings & Rosenberg LLP
One East Pratt Street
Suite 901
Baltimore, MD 21202-1249

The Washington-McLaughlin Christian School,
6501 Poplar Avenue
Takoma Park, MD 20912-4867

U.S. Trustee
Office of The United States Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770-6305

Allphase Consulting LLC
1711 Pebble Beach Drive
Brentwood, MD 20722

Montgomery County Department of Finance
Division of Treasury, Property Tax Secti
27 Courthouse Square, Suite 200
Rockville, MD 20850-2308

Montgomery County,
Office of County Attorney
101 Monroe Street Fl 3
Rockville, MD 20850-2503

State of Maryland
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202-5994

Tax Auction of East Coast, LLC
C/o Eskin Law, LLC
1700 Reisterstown Road, Suite 212
Pikesville, MD 21208-2484

US Dept of Housing and Urban Development
Multifamily Northeast Region
Bank of America Building, Tower II
100 South Charles Street, Suite 500
Baltimore, MD 21201-2776

US Trustee - Greenbelt
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770-6305

Augustus Curtis
Offit Kurman
7501 Wisconsin Ave, Suite 1000W
Bethesda, MD 20814-6604

Monique Desiree Almy
Crowell & Moring
1001 Pennsylvania Avenue, N.W., 10th Fl
Washington, DC 20004-2595

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)TAX AUCTION OF EAST COAST, LLC
c/o Richard L. Costella
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, MD 21202-1249

(u)The Washington-McLaughlin Apartments
INVALID ADDRESS PROVIDED

End of Label Matrix
Mailable recipients 12
Bypassed recipients 2
Total 14